IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT BRINSON,                    )
                                   )
        Plaintiff;                 )
                                   )
vs.                                )        CIVIL ACTION
                                   )        FILE NO.: _____
NORMAN LARSEN,                     )
ROBERT SUMME,                      )
and GEORGE MILLER,                 )
                                   )
        Defendants.                )
_____   )

## COMPLAINT

COMES NOW Plaintiff Robert Brinson who brings this Complaint, pursuant to O.C.G.A. §9-2-61, seeking damages and declaratory relief against Defendants, pursuant to 42 U.S.C. §1983, as well as relief under Georgia law.

## JURISDICTION

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. §§1983, 1988; 28 U.S.C. §1331; and, 28 U.S.C. §1343, the Fourth and Fourteenth Amendments to the United States Constitution, and supplemental

jurisdiction, pursuant to 28 U.S.C. §1367. This Court is authorized to grant declaratory relief, pursuant to 28 U.S.C. §2201 and 28 U.S.C. §2202.

## VENUE

2.

Venue is proper in this Court, pursuant to 28 U.S.C.A. §1391. DeKalb County, Georgia, ("DeKalb") is within this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## PARTIES

3.

Plaintiff Robert Brinson ("Brinson") is a resident of Georgia, and is over the age of eighteen years.

4.

Defendant Norman Larsen ("Larsen") was an officer of the DeKalb County, Georgia, Police Department ("DKPD") and acted under color of the laws, ordinances, regulations and customs of Georgia law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

5.

Defendant Robert Summe ("Summe") was an officer of the DKPD and acted under color of the laws, ordinances, regulations and customs of Georgia law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

6.

Defendant George Miller ("Miller") was an officer of the DKPD and acted under color of the laws, ordinances, regulations and customs of Georgia law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

7.

Collectively, the individual defendant police officers named above shall, at times, be referred to below collectively, as indicated by the attentive fact and circumstances as the "Defendant Officers."

PROCEDURAL POSTURE

8.

Plaintiff previously filed suit against the Defendant Officers, on July 3, 2013, in the Superior Court of DeKalb County, asserting the same claims asserted herein.

That case was styled: *Robert L. Brinson v. W. Burrell Ellis, et al.*; Superior Court of DeKalb County, State of Georgia; Civil Action File Number: 13-CV-7296-8.

9.

The Defendant Officers acknowledged personal service and service of process in that action, on July 3, 2013.

10.

Plaintiff dismissed that action, without prejudice, on October 2, 2014.

11.

This action is a renewal of the original action, pursuant to O.C.G.A. §9-2-61.

12.

All costs in the original action have been paid, as required by O.C.G.A. §9-2-61, as a condition precedent to the filing of this action.

## FACTUAL ALLEGATIONS

13.

The plaintiff incorporates the allegations set forth in paragraphs 1 through 12, as if fully set forth herein.

14.

On August 3, 2011, Mr. Brinson was driving on Interstate 20 West in DeKalb County, on his way from Augusta to Atlanta for an appointment with a potential customer, on behalf of his employer, a commercial and residential alarm company.

15.

At approximately 7:50 p.m. that day, Officer Larsen stopped Mr. Brinson for speeding on I-20, near Panola Road, in DeKalb County, Georgia.

16.

After inquiring where Mr. Brinson was going and reviewing Mr. Brinson's license, Officer Larsen told Mr. Brinson to remain in his car and that he would be back in a few minutes.

17.

Mr. Brinson believed that he would be written a traffic citation and be allowed to leave; still hoping to reach his scheduled appointment before he was too late and thereby lose the contract and income.

18.

During the time Mr. Brinson was awaiting Officer Larsen's return, Larsen called for back up.  Defendant Miller, a sergeant and supervisor, responded.

19.

After filling out the citation for speeding, Officer Larsen told Sgt. Miller that he wanted to search Mr. Brinson's car.  Sgt. Miller told Officer Larsen that he should simply ask for consent to search and, if consent was not granted, allow Mr. Brinson to leave.

20.

Sgt. Miller, as Officer Larsen's supervisor, had the authority to order Larsen to release Mr. Brinson if Mr. Brinson refused to consent to a search of his car.

21.

Officer Larsen returned to Mr. Brinson's vehicle and told him to get out of the car.  Mr. Brinson complied.

22.

Rather than providing Mr. Brinson with the citation and allowing him to be on his way, Officer Larsen asked him if he had any weapons, large amounts of money, or drugs in his vehicle.

23.

Mr. Brinson replied, unequivocally, that he did not.

24.

Nevertheless, without any reasonable, articulable suspicion or probable cause, Officer Larsen asked Mr. Brinson if he could search his vehicle.

25.

Mr. Brinson responded that he would not consent to a search of the car.

26.

Mr. Brinson explained, again, that he was late for appointment (further supported by the fact he was wearing a company shirt with the company's logo on it), and it would be a waste of time for everyone.

27.

Despite Mr. Brinson's reasonable and logical response, Officer Larsen told Mr. Brinson to get back into his vehicle and wait.

28.

Sgt. Miller was present when Mr. Brinson was told to get out of the car, asked whether he had any contraband in his vehicle, refused to grant consent for the search, and was told to return to his car and wait yet took no action to prevent Officer Larsen's unlawful conduct.

29.

Despite knowing there was no reasonable, articulable suspicion to detain Mr. Brinson, Sgt. Miller failed to order Officer Larsen to end the unlawful detention and allow Mr. Brinson to leave.

30.

Mr. Brinson was improperly and unreasonably detained, sitting in his vehicle, for approximately 35 minutes, with no explanation given as to why he was being detained.

31.

Officer Larsen called for a K-9 Unit to come to the scene to do a "free-air sniff."

32.

At 8:06 p.m., more than fifteen minutes after Officer Larsen initiated the traffic stop, checked Mr. Brinson's license and had completed filling out the speeding citation to Mr. Brinson, Officer Summe received a call advising that Officer Larsen was requesting the assistance of a K-9 Unit.

33.

Despite knowing that: (1) the K-9 Unit would not arrive for at least an additional twenty minutes; (2) Mr. Brinson was late for an appointment; (3) Mr. Brinson had not consented to the delay or a search; and, (4) there was no reasonable articulable suspicion or probable cause to believe that Mr. Brinson was committing any crime, Larsen continued to detain Mr. Brinson long past the time he had completed issuing Mr. Brinson a traffic citation.

34.

Finally, at 8:26 p.m., the K-9 Unit of Officer Summe and the canine officer arrived.

35.

Upon the arrival of Officer Summe, Sgt. Miller remained at the scene, knowing that the K-9 unit just arrived and that the traffic stop would continue during the search to be performed by the arriving unit.

36.

Officer Larsen approached the vehicle and told Brinson to get out of the car, again with no explanation. Mr. Brinson did as he was told and was directed some distance behind the vehicle.

37.

Officer Summe and the canine officer began to search in and around the vehicle.

38.

While the K-9 officer and handler were conducting an unauthorized and improper search in and around the vehicle, Mr. Brinson asked Officer Larsen if it was normal procedure to detain everyone who is stopped for a traffic violation and to ask them about drugs.

39.

Officer Larsen responded, "We didn't detain you, we asked you about drugs. We are just going off these clues and everything else."  Officer Larsen would not explain to Brinson what the so called "clues and everything else" were that could possibly justify the lengthy, illegal detention and search of a citizen who was simply trying to get to an appointment.

40.

As the search continued, Mr. Brinson continued to ask Officer Larsen why he was being held and why his car was being searched. Officer Larsen responded, "If there was nothing in your car, a normal person is like, yeah, you can look in my car,

why would you care for us to look in your car if there ain't nothing in your car?" and stated that Mr. Brinson could have already been on his way, if he had just waived his constitutional rights to be free from unreasonable searches and seizures and allowed Larsen to search his vehicle voluntarily.

41.

Brinson responded that he did not consent to having his vehicle searched because he was late for his appointment and it was all a waste of his time, as he did not use or have any drugs or weapons.

42.

During the encounter, Officer Larsen pointed towards the highway and said, "look at all these drugs moving back and forth; especially from Augusta" or words to that effect.  Larsen made other remarks suggesting problems regarding the drug trade between Atlanta and Augusta, apparently suggesting that, as Mr. Brinson was coming to Atlanta from Augusta, he must have drugs or drug money, thereby justifying the illegal detention and search and violation of Mr. Brinson's rights, without any articulable suspicion or probable cause.

43.

Officer Summe and the canine officer searched the car for any contraband; however, numerous, thorough searches revealed absolutely nothing illegal in Mr. Brinson's vehicle.

44.

Upset at finding nothing illegal in the car, the Officers decided to detain Mr. Brinson even further while they, along with the canine officer, searched the nearby wooded area, just in case they found something that would justify charging Mr. Brinson with some offense.  Again, nothing was found.

45.

After the unconstitutional detention, search and seizure, the officers acknowledged that they had found nothing and left, with no apology for the delay or their disrespectful and unconstitutional behavior.

46.

Mr. Brinson had been detained for at least fifty-five (55) minutes.

47.

Sgt. Miller stayed at the scene of the stop throughout the unlawful detention and search of Mr. Brinson's car.

48.

During the time between when the traffic citation was issued to Mr. Brinson and when the improper search was performed, none of the Defendants took any steps to prevent the unlawful detention and search from continuing, despite there being ample time and opportunity to do so.

## COUNT I

Unreasonable Search and Seizure under the
United States' Constitution

49.

Plaintiff incorporates the allegations set forth in paragraphs 1 through 48, as if fully set forth herein.

50.

While Officer Larsen's initial stop of Mr. Brinson for speeding was lawful, Defendant Larsen had no probable cause or even reasonable articulable suspicion that Mr. Brinson had committed or was committing any crime justifying a search of his person or vehicle.

51.

There was no evidence, whatsoever, that Mr. Brinson had any contraband of any sort in his possession or in his vehicle.

52.

Defendant Larsen detained Mr. Brinson far beyond the reasonable duration of a minor traffic stop; there being no legitimate, lawful reason for the delay.

53.

In fact, Larsen had completed the traffic stop at or around 7:58 p.m., when he returned to Mr. Brinson's vehicle with the completed traffic citation.

54.

When Defendant Larsen called for a K-9 Unit, he and Sgt. Miller had neither reasonable articulable suspicion nor probable cause to prolong the traffic stop and detain and arrest Mr. Brinson beyond the time needed to issue the traffic citation.

55.

The Defendant Officers' continued, intentional detention and seizure of Mr. Brinson, well beyond the time required for this minor traffic stop, without reasonable articulable suspicion or probable cause, was unreasonable under the Fourth Amendment to the United States Constitution.

56.

Mr. Brinson had the right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure of his person and vehicle.

57.

The search of Brinson's vehicle without a warrant, reasonable suspicion, or probable cause was unreasonable under the Fourth Amendment to the United States Constitution.

58.

Defendant Larsen suggests that the fact Mr. Brinson appeared nervous during a traffic stop justified his lengthy detention and search of Mr. Brinson and his vehicle, long after the purpose for the traffic stop was concluded.

59.

Were it not enough that the law is clearly established in that "appearing nervous" does not establish even reasonable articulable suspicion, much less probable cause, sufficient to justify detention and search, a video taken by Mr. Brinson with his iPhone during the incident evidences that it was Officer Larsen, not Mr. Brinson,

who appeared nervous and unsure of himself when questioned by Mr. Brinson as to why he was being delayed and his vehicle searched without cause.

60.

The Defendant Officers violated clearly established law; no reasonable officer could have believed that it was lawful to prolong the detention and seizure of Mr. Brinson for nearly an hour without a warrant, reasonable suspicion, or probable cause, after the citation was issued.

61.

In all the foregoing, the Defendants acted with reckless, deliberate and callous indifference to Mr. Brinson's constitutionally protected rights.

62.

The Defendants combined and conspired to violate Mr. Brinson's rights as described above; therefore, the individual Defendants are jointly and severally liable for the entire damages cause to the Plaintiff.

63.

The Defendant Officers are each liable to Plaintiff for their failure to take any reasonable steps to protect Plaintiff from the unlawful conduct of the other officers present, despite having ample time and opportunity to do so.

64.

As a direct and proximate result of the conduct of the Defendants, as set forth above, Mr. Brinson suffered economic and non-economic losses and damages for which all the Defendants are liable to Mr. Brinson.

## COUNT II

### False Imprisonment Under Georgia Law

65.

Plaintiff incorporates the allegations set forth in paragraphs 1 through 64, as if fully set forth herein.

66.

By unlawfully detaining Mr. Brinson and depriving him of his personal liberty, the Defendant Officers are guilty of false imprisonment, a tort for which an action for damages lies, pursuant to O.C.G.A. §51-7-20.

67.

The Defendant Officers combined and conspired to accomplish the unlawful objective of falsely imprisoning Brinson by unlawful means. The other officers failed to take any reasonable steps to protect Plaintiff from the unlawful detention and search, despite ample time and opportunity to do so.

68.

The false imprisonment was the act of the individual Defendants jointly, and the individual Defendant Officers are jointly and severally liable for damages to the Plaintiff, pursuant to O.C.G.A. §51-7-22.

69.

The Defendant Officers, with malice and oppression and with the intent to humiliate and otherwise harm the Plaintiff, falsely imprisoned and/or combined and conspired to falsely imprison Brinson and did so under color of legal process.

70.

As a direct and proximate result of the conduct of the Defendant Officers, as set forth above, Mr. Brinson suffered economic and non-economic losses and damages for which all the Defendants are liable to Mr. Brinson.

## **COUNT III**

### Punitive Damages

71.

Plaintiff incorporates the allegations set forth in paragraphs 1 through 70, as if fully set forth herein.

72.

The acts of the Defendant Officers, as set forth herein, were willful, wanton, malicious and oppressive, so as to entitle the Plaintiff to an award of punitive damages against the Defendant Officers.

## COUNT IV

### Bad-Faith Fees & Expenses – O.C.G.A. §13-6-11

73.

Plaintiff incorporates the allegations set forth in paragraphs 1 through 72, as if fully set forth herein.

74.

The acts of the Defendant Officers were committed in bad-faith and thereby give rise to Plaintiff's claim to bad-faith fees and expenses, pursuant to Georgia Law.

## PLAINTIFF'S PRAYER FOR RELIEF

On the basis of the foregoing, Plaintiff respectfully prays that this Court:

a.    Assume jurisdiction over this action;

b.    Award Plaintiff actual damages, expenses and other economic losses;

c.    Award Plaintiff general damages in an amount to be determined by the enlightened conscience of an impartial jury;

d.     Award Plaintiff nominal damages for violations of Plaintiff's constitutional rights;

e.     Award Plaintiff punitive (exemplary) damages against the individual Defendants, to the extent permitted by law, and award fees and expenses as authorized by O.C.G.A. §13-6-11;

f.     Award Plaintiff's attorney's fees under 42 U.S.C. §1988 and any other applicable provision(s) of law;

g.     Declare that Defendants violated Plaintiff's rights under the United States Constitution; and,

h.     Award such other and further relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED.**

[Remainder of page intentionally left blank.]

Respectfully submitted this 16th day of October, 2014.

BULLMAN LAW GROUP, LLC


/s/ Mark B Bullman
Mark B. Bullman
Georgia Bar No. 094376
J. Kyle Brooks
Georgia Bar No. 773561

7000 Peachtree Dunwoody Road
Building 15, Suite 200
Atlanta, Georgia 30328
(770) 563-9300 - Telephone
(770) 563-9330 - Facsimile
mbb@bullmanlawgroup.com

ISENBERG & HEWITT, P.C.


/s/ Melvin L Hewitt
Melvin L. Hewitt, Jr.
Georgia Bar No. 350319
Attorneys for Plaintiff

7000 Peachtree Dunwoody Road
Building 15, Suite 300
Atlanta, Georgia 30328
(770) 351-4400 - Telephone
(770) 828-0100 - Facsimile
mel@isenberg-hewitt.com