IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT BRINSON,

    Plaintiff,

       v.

NORMAN LARSEN, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:14-CV-3340-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Plaintiff's Motion for Partial Summary Judgment [Doc. 24] and the Defendants' Motion for Summary Judgment [Doc. 25]. For the reasons stated below, the Defendants' Motion for Summary Judgment [Doc. 25] is GRANTED and the Plaintiff's Motion for Partial Summary Judgment [Doc. 24] is DENIED.

### I. Background

On August 3, 2011, at approximately 7:50 P.M., Defendant Officer Larsen stopped the Plaintiff, Robert Brinson for a speeding violation on Interstate 20 West, near Panola Road.[1] Officer Larsen's laser speed detection device put the Plaintiff's

---

[1]    Defs.' Statement of Facts ¶ 1.

speed at 87 miles per hour in a 65 mile per hour zone.[2] When Officer Larsen approached the car initially, the Plaintiff was stuttering, his hands were shaking, and he appeared very nervous.[3] The Plaintiff's driver's license listed an Augusta address.[4] When asked if the Augusta address was current, the Plaintiff responded that he actually lived in Atlanta.[5] When asked again about his address, the Plaintiff responded that he sometimes lived in Atlanta and sometimes in Augusta.[6] At this point, given the Plaintiff's inconsistent statements about his addresses, along with the fact that the Plaintiff was nervous and in a rental car, Officer Larsen decided to ask if narcotics or money were in the vehicle.[7] Initially, the Plaintiff did not say anything regarding narcotics; he just looked down and nodded around.[8] At some point, the Plaintiff did deny having narcotics in the car.[9] When asked about having a large amount of currency in the car, the Plaintiff looked back at the vehicle then turned to Officer

---

[2]   Id. ¶ 2.

[3]   Larsen Dep. at 33.

[4]   Id.

[5]   Id.

[6]   Id.

[7]   Id. at 33-34.

[8]   Id. at 34.

[9]   Id.

Larsen and said no.[10] Based on Officer Larsen's knowledge and experience, people often look back at a vehicle inadvertently when they have illicit substances.[11] Officer Larsen testified that he had reasonable suspicion that another crime was occurring in the vehicle because the Plaintiff was nervous, gave conflicting statements about where he lived, made a target identification when looking back at the vehicle, and was driving a rental car.[12]

Officer Larsen asked for consent to search the Plaintiff's car.[13] The Plaintiff did not consent to a search.[14] At some point, once he believed another crime was occurring, Officer Larsen called for backup, including a K-9 unit.[15] Sergeant Miller arrived on scene to provide backup.[16] Officer Larsen discussed the situation with Sergeant Miller, and they waited for the K-9 unit to arrive.[17] Officer Summe, the K-9

---

[10]   Id.

[11]   Id. at 44.

[12]   Id. at 42-45.

[13]   Id. at 45.

[14]   Id.

[15]   Id. at 46-47.

[16]   Id. at 47.

[17]   Id. at 48-49.

unit officer, arrived on scene at 8:26 P.M.[18] That was 28 minutes after Officer Larsen had initially printed Mr. Brinson's speeding citation at 7:58 P.M.[19] Officer Summe made an independent determination that reasonable suspicion existed to detain Mr. Brinson and performed a free air sniff on Mr. Brinson's car.[20] K-9 Rocky alerted on the passenger side of Mr. Brinson's car.[21] Officer Summe then deployed K-9 Rocky inside the car, and he alerted on the driver's side seat.[22] After that alert, Officer Summe searched Mr. Brinson's car but found no contraband of any kind.[23] Officer Summe then searched the area surrounding Mr. Brinson's car and found no contraband.[24] Following this, Officer Larsen issued Mr. Brinson a Super Speeder citation and released him on scene.[25] Mr. Brinson filed this lawsuit seeking damages under 42 U.S.C. § 1983 and state law. The Defendants and Mr. Brinson now move for summary judgment.

---

[18]   Id. at 89.

[19]   Id.

[20]   Summe Dep. at 73.

[21]   Id. at 73-74.

[22]   Id. at 74.

[23]   Id. at 74-75.

[24]   Id. at 75-76.

[25]   Pl.'s Mot. for Summ. J., Ex. 3, p. 3.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[26] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[27] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[28] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[29] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[30]

## III. Discussion

### A. Fourth Amendment Claim

The Plaintiff and the Defendants move for summary judgment on the Plaintiff's

---

[26]    FED. R. CIV. P. 56(a).

[27]    Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[28]    Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[29]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[30]    Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

claim for violation of the Fourth Amendment. The Defendants claim they are entitled to qualified immunity. To be entitled to qualified immunity in the Eleventh Circuit, an officer must show that he was acting within the scope of his discretionary authority at the time of the alleged wrongful acts.[31] Once the officer has proved that he was within the scope of his discretionary authority, the Plaintiff must show that the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[32] In order to establish that a reasonable officer would have known of a right, a plaintiff must show development of law in a "concrete and factually defined context" such that a reasonable officer would know that his conduct violated federal law.[33] In the context of an investigatory stop and search like the one at issue here, the issue is "whether the officer had arguable reasonable suspicion to support an investigatory stop."[34] "A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity."[35]

---

[31]   Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

[32]   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[33]   Jackson v. Sauls, 206 F.3d 1156, 1164-65 (11th Cir. 2000).

[34]   Id. at 1166.

[35]   Id. at 1165-66.

Here, the officers are entitled to qualified immunity. First, the Plaintiff admits that the Defendants were within the scope of their discretionary authority.[36] With respect to the issue of reasonable suspicion, an officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."[37] In the context of determining Fourth Amendment violations in criminal motions to suppress, the Eleventh Circuit has noted that "inconsistencies in travel plans can give rise to a reasonable suspicion."[38] The inquiry in the case of qualified immunity sets a lower bar – whether there was *arguable* reasonable suspicion. Here, Officer Larsen testified that the Plaintiff appeared nervous, would not make eye contact, was stuttering, and had shaking hands during the initial encounter.[39] Although the Plaintiff denies that he was nervous at this point, he offers no evidence to that effect. Instead, he offers a fifty-four second long video-clip from later in the stop where he does not appear to be nervous.[40] The Plaintiff admits that he informed Officer Larsen that he sometimes lived in Atlanta and

---

[36]   Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 9.

[37]   United States v. Boyce, 351 F.3d 1102, 1107 (11th Cir. 2003).

[38]   Id. at 1109.

[39]   Pl.'s Resp. to Defs.' Statement of Facts ¶ 4.

[40]   Pl.'s Resp. to Defs.' Mot. for Summ. J., at Ex. 16.

sometimes lived in Augusta.[41] Additionally, when asked whether he had drugs in the car, the Plaintiff looked back at the car before answering, which officer training indicates can be a target identification.[42] The Plaintiff's nervousness, combined with his inconsistent travel plans, as well as the fact that he was traveling at a high rate of speed in a rental car on a known drug corridor, and the fact that he looked back at the car before answering questions about its contents give rise to arguable reasonable suspicion here.

Even if there were not arguable reasonable suspicion here, the law in the Eleventh Circuit is not well developed in a concrete and factually defined context such that an officer could have known that this stop would have been unlawful. The <u>Boyce</u> case relied on by the Plaintiff actually suggests that inconsistent travel plans can give rise to reasonable suspicion.[43] And although the Plaintiff cites the Supreme Court's 2015 decision related to dog sniffs and traffic stops, a case from 2015 cannot clearly establish law at the time of an August 2011 traffic stop.

Sergeant Miller is also entitled to qualified immunity. The Plaintiff claims that he saw unconstitutional conduct and therefore should have stopped it. First, because

---

[41]    Pl.'s Resp. to Defs.' Statement of Facts ¶ 5.

[42]    Larsen Dep. at 43.

[43]    <u>United States v. Boyce</u>, 351 F.3d 1102, 1109 (11th Cir. 2003).

this Court finds that Officer Larsen had arguable reasonable suspicion, there was no clear constitutional violation that Sergeant Miller should have stopped. Second, even if there had been a constitutional violation, the law in the Eleventh Circuit finds only that officers must intervene to stop excessive force.[44] No law in the Eleventh Circuit clearly establishes that officers must intervene to stop any other conduct. Sergeant Miller is therefore entitled to qualified immunity. So too with Officer Summe. For the same reasons as Sergeant Miller, Officer Summe was not required to intervene. Furthermore, because Officer Larsen had arguable reasonable suspicion, the dog sniff conducted by Officer Summe is protected as well. All of the officers are entitled to qualified immunity. The Defendants' motion for summary judgment should be granted and the Plaintiff's motion for summary judgment should be denied.

### B. State Law Claim

Officer Larsen, Sergeant Miller, and Officer Summe are entitled to official immunity from the Plaintiff's claim for false imprisonment under Georgia law. The Georgia Tort Claims Act provides that it "constitutes the exclusive remedy for any tort committed by a state officer or employee. A State officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not

---

[44]     Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007).

subject to lawsuit or liability therefor."[34] Georgia courts have interpreted this to provide for immunity unless an official performs a ministerial act negligently or a discretionary act with actual malice.[35] The Plaintiff concedes that the officers were performing discretionary functions, meaning the question remaining is whether they acted with actual malice.[36] The Plaintiff offers no evidence whatsoever that the Defendants acted with actual malice – simply that they conducted a lawful traffic stop and then conducted a search that did not reveal any evidence. The Defendants are entitled to official immunity. The Defendants' motion for summary judgment on the false imprisonment claim should be granted and the Plaintiff's motion for summary judgment should be denied. Because the Court grants summary judgment for the Defendants on all claims, the Plaintiff's claim for punitive damages must necessarily fail as well.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion for Summary Judgment [Doc. 25] is GRANTED and the Plaintiff's Motion for Partial Summary Judgment [Doc. 24] is DENIED.

---

[34]     O.C.G.A. § 50-21-25.

[35]     <u>Roper v. Greenway</u>, 294 Ga. 112, 113 (2013).

[36]     Pl.'s Reply to Defs.' Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 13-14.

SO ORDERED, this 10 day of November, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge